**Dated: September 10, 2015**

**The following is ORDERED:**



_____
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF OKLAHOMA

In re:

RUSSELL LYNN JOHNSON and          Case No. 15-80188-TRC
BRANDI DAWN JOHNSON,             Chapter 13
               Debtors.

### ORDER GRANTING MOTION TO SET VALUE OF SECURED CLAIM

Before the Court is Debtors' Motion to Set Value of Secured Claim (Docket Entry 10), Creditor First Bank & Trust Co.'s Objection (Docket Entry 20), Debtors' Response (Docket Entry 22), and Creditor's Supplemental Objection (Docket Entry 32). The Court held an evidentiary hearing on the Motion on July 9, 2015. Thereafter, the parties were given time to submit proposed findings of fact and conclusions of law. The matter was taken under advisement after the parties' attempts at settlement failed. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334 and 157.

After reviewing the evidence and applicable statutory and case law, the Court concludes that the anti-modification provision of 11 U.S.C. §1322(b)(2) does not apply to First Bank's secured claim; therefore, the Court determines that the value of First Bank's secured claim on

Debtors' real estate and 1974 mobile home is $ 40,000, and the value of Debtors' 2000 Dodge van is $ 0.

I.     **Findings of Fact.**

Debtors Russell and Brandi Johnson ("Johnsons") filed this Chapter 13 case on March 6, 2015. They value their homestead in Carter County, Oklahoma with a 1974 mobile home thereon at $18,600. Creditor First Bank & Trust Co. ("First Bank") holds a mortgage on this property. First Bank filed a proof of claim for $ 61,523.29, identifying the basis for its secured claim as "mortgage note/additional collateral", and listing its security as a 1974 Berkley Mobile Home, and 2000 Dodge Van. It valued this property at $ 58,300.00. Attached to the proof of claim is a Promissory Note from the Johnsons, dated 02/27/2008, for $65,189.72, with a collateral description of 259 Hefley Rd., Lone Grove, OK, and 2000 Dodge Van. The purpose of the loan is listed as "Refinance." Other attachments to the proof of claim include the Johnsons' Loan History Record; a Warranty Deed for 259 Hefley, Lone Grove, OK, from First Bank to the Johnsons dated June 29, 2007, and recorded with the Carter County Clerk; a Real Estate Mortgage with Power of Sale dated 02/27/2008 from the Johnsons to First Bank, which references the Promissory note dated 02/27/2008; and a Security Agreement dated 02/27/2008 between the Johnsons and First Bank listing collateral as the used 2000 Dodge Van. During the hearing, First Bank also submitted evidence to the Court consisting of a Promissory Note from the Johnsons to First Bank, dated 06/29/07 in the amount of $ 50,850, secured by a first mortgage on 259 Hefley, Lone Grove, OK, for the purpose of purchasing real estate from First Bank. The Bank also submitted exhibits of four extension agreements entered in 2012 and 2013 between the Johnsons and First Bank deferring payments on the 2008 Promissory Note. The first, third and fourth extension agreements listed the collateral for the 2008 Note as the real estate, 1974 Berkley Mobile

Home and 2000 Dodge Van. The second extension agreement only listed the physical address of the Johnsons' home as collateral, but an attached page with payoff information included a hand-written notation that the collateral for the loan was the real estate, the 1974 Berkley Mobile home and the 2000 Dodge Van.

At the evidentiary hearing, Brandi Johnson testified regarding the purchase and financing of the 1974 mobile home and its condition. She stated that she and her husband bought the real estate and mobile home from First Bank in 2007 for $56,000, with a $ 4-5,000 down payment. They refinanced the transaction in 2008, increasing the note to $ 65,000, and adding the 2000 van as collateral. Most of her testimony focused on the condition of the mobile home. She stated that the mobile home is tied down to the concrete slab and skirted, has utilities connected, and is on a septic system. She stated that there is a crawl space under the mobile home, between the floor and a concrete slab   Mrs. Johnson did not know whether the wheels and axles have been removed. She believes the home could be moved, although several rooms and a covered porch have been added on to the original mobile home. When she and her husband first purchased the home, they surrendered the motor vehicle title to the Carter County Assessor. They pay real estate taxes, not personal property taxes, on their real estate and home. Mrs. Johnson described many problems regarding the home's condition, including sagging floors, plumbing and electrical problems, gaps between windows and walls, cracks in the ceiling, and inoperable heating and cooling systems. She described the mobile home as being in average condition for its age. She stated that she and her husband had done a good job of maintaining the property in good condition until the past year or so when they fell behind in making needed repairs. There are shop buildings on the property which are not in use. Mrs. Johnson believed that the original sales price on the mobile home was approximately $18,000. However, she and her husband were not the original purchasers.

Mrs. Johnson also testified that the 2000 Dodge Van had been in an accident but that they continued to drive it until it stopped running. Since they had no money to make the necessary repairs, she asked and received permission from an unspecified loan officer at First Bank to have the van hauled away. She did not state when this occurred, but the Johnsons' schedules reflect that this was in 2011. First Bank's extension agreements, however, continued to list the 2000 Dodge Van as collateral for the 2008 Promissory Note, as did its Proof of Claim filed in this bankruptcy.

Darla Cox, a realtor in Ardmore since 1999, testified on behalf of the Johnsons regarding the value of their home and real estate. Cox stated that she has a license to appraise but she is not a board-certified appraiser. She is a landlord, as well. Cox prepared a Comparative Market Analysis for the Johnsons' property and home on March 3, 2015 for potential sales price. She stated that the mobile home is on a two acre tract in a nice, but not highly sought-after neighborhood. She observed that the mobile home is in very poor condition. Most of the value lies in the real estate, and her opinion is that a buyer of this property would most likely remove the mobile home. In fact, she believes it would be very difficult to sell a 41 year old mobile home such as this one, and that it would be next to impossible to get a mortgage on it due to its age and low value. She estimated that the price per acre of a very nice lot in this area is $ 5,000. Cox noted that the Johnsons' home is skirted and has straps but she did not look under it to determine whether the axles and wheels were still intact.

Cox searched for comparable sales in her MLS (Multiple Listing Service) area by looking at age of home, square footage, mobile homes, and acreage of one to ten acre tracts. Cox used five comparable sales that she felt were the most similar to the Johnsons' property to arrive at a sales price. She used sales from Carter, Murray, Johnston, and Marshall Counties. The average price

of the five sales she used was $ 18,600, or $18.37 per square foot. She estimated a sales price for the Johnsons' real estate and mobile home is $ 18,600. The property she chose as closest in features to the Johnsons' property was located in Carter County and was a 1985 mobile home on a 1.5 acre tract with outbuildings similar to those on the Johnsons' property. The 1985 mobile home had more square feet than the Johnsons' home and sold for $13,000 in October of 2013. It was listed "as is", which indicates to the Court that the seller recognized the property was in need of repair and had discounted the price accordingly. Other comparable sales she used were mobile homes, frame homes and a modular home.

First Bank presented a written Manufactured Home Appraisal Report dated July 29, 2014, prepared by Jack D. Gentry for refinancing purposes. Gentry testified that he has been a board-certified residential appraiser since 2003. He has appraised over 4,000 residences. His appraisal of Johnson's property and mobile home in 2014 using the comparable sales approach was $ 56,500. He also appraised the property at $ 52,236 using the cost approach, however, he stated that comparable sales was the preferred method for appraisals of this type.

Gentry's appraisal identifies the home as forty years old, in fair condition, consists of 1,412 square feet, and is located in a rural area on a public, gravel road. Gentry described the process he followed to prepare the refinancing appraisal on Johnsons' property. He measured the exterior of the mobile home, took pictures of the inside and outside of the property, inspected the heating and air conditioning system. Gentry noted that many similar sales are not on the MLS service but are listed for sale by owner (FSBO). Therefore, he uses both the MLS service and County Assessor records. Gentry chose sales within an eight mile radius of the Johnsons' property, looking only at manufactured home sales in rural areas. He said that the rule of thumb for rural property appraisals is a maximum of a twenty mile radius. The comparable sales he used were a 30 year old, 1809

square foot mobile home on a five acre lot with a sales price of $ 33,000, a 47 year old, 780 square foot mobile home on .34 acres which sold for $ 45,000, and a 19 year old, 1,216 square foot mobile home on .89 acres which sold for $55,000. Gentry reviewed the comparable sales Cox relied upon and stated that he would not use them as comparable sales. He only reviewed sales of manufactured homes. Gentry did not note any weakness in the floors as mentioned by Mrs. Johnson and Cox, nor did he see any problems with doors or a cracked window. If he had been aware that certain electrical outlets were not operative, that information may have affected his appraised value of the property.

Gentry reported that the Carter County Assessor lists the Johnsons' mobile home as affixed to the real estate, and is taxed as real, not personal, property. .The foundation is block and pier to which the mobile home is connected with tie-downs. The towing hitch, wheels and axles appeared to have been removed since none were visible in the crawl space area Gentry viewed. His appraisal valued the site alone at $17,500. Gentry viewed the property again two days before the hearing and stated that he saw nothing that would cause him to change his 2014 appraisal. The property and exterior of the home is well-maintained, reflecting pride of ownership, is landscaped, the site of the property is very pretty, it is in a very good school district, and there is a shortage of properties for sale in the area.

The Court finds that the appraisal of Jack Gentry contained more information and was better supported than the appraisal submitted by Darla Cox. However, as a realtor, Cox's opinion regarding market prices must be considered. Cox and Mrs. Johnson noted several needed repairs to the HVAC system, plumbing and electrical systems, and updates to the interior. Considering these items, and the age of the mobile home, the Court finds that Gentry's appraisal should be reduced to account for these factors. The Court therefore finds that the value of the Johnsons'

Case 15-80188    Doc 49    Filed 09/10/15    Entered 09/10/15 10:21:17    Desc Main
Document    Page 6 of 11

home is $ 40,000. No information was provided regarding the current value of the van in opposition to the Johnsons' valuation of $0, therefore the Court adopts that value.

**II.    Conclusions of Law**

The central issue here is whether the Johnsons can modify the secured claim of First Bank. First Bank argues that they cannot, because of the anti-modification clause in 11 U.S.C. § 1322(b)(2), which states that a chapter 13 plan may "(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence …." The Johnsons argue that the anti-modification clause does not apply because their mobile home is personal property, not real property, therefore they can modify First Bank's claim. First Bank argues that the mobile home is affixed to the real property and therefore is not personal property.

The Court agrees with First Bank that the mobile home is real property, not personal property. As First Bank notes, Oklahoma courts consider three factors for determining whether a mobile home is a fixture and thus treated as real estate or whether it remains personal property: : (1) actual or constructive annexation to the realty, (2) appropriateness to the use or purpose of that part of the realty with which it is connected, and (3) intention of the party making the annexation to make it a permanent accession to the freehold.[1] The evidence presented to the Court was that the mobile home had been affixed to the real estate by being connected to bolts embedded in concrete embedded in the ground, the wheels and axles had been removed, permanent additions had been constructed and attached to the original mobile home, a deck was attached, the mobile home was connected to utilities, and the Johnsons treated this as a permanent residential structure. Furthermore, Mrs. Johnson testified that she had surrendered the original title to the county tax

---

[1] *C.I.T. Financial Serv. v. Premier Corp.*, 1987 OK 101, 747 P.2d 934 (citations omitted).

officials so that the property no longer is tagged as a motor vehicle. It is not taxed as personal property. This is in accordance with Oklahoma law. Okla. Stat. tit. 47, §1110(E) allows the title of a manufactured home that is permanently affixed to real estate to be surrendered to the Tax Commission or motor vehicle tag agents for cancellation. In addition, Okla. Stat. tit. 68, § 2812(A) provides that where a manufactured home is located on land owned by its owner, the home shall be listed and assessed for ad valorem taxation as real property and may qualify for homestead exemption.

Having agreed with First Bank that this is real, not personal, property, the Court must determine whether the anti-modification clause applies and protects the Bank from a reduction in the value of its secured claim. The Johnsons' 2008 Promissory Note listed collateral as real estate, 259 Hefley Road, Lone Grove, Oklahoma, and a 2000 Dodge Van. Thus, the Johnsons' argue that First Bank's claim was not secured only by real property that was Debtors' principal residence. In response, First Bank urges this Court to consider several factors which it believes makes the application of § 1322(b)(2) appropriate here. It asks the Court to consider the intent of the loan, which originally was to allow the Johnsons to purchase a residence from First Bank, as noted in a promissory note dated in 2007, the negligible value of the van, and the Bank's purported release of the van from the loan before bankruptcy was filed. While the Court is sympathetic to First Bank's position, it is unpersuaded by these arguments.

In this Court's view, the plain language of § 1322(b)(2) prevents the modification of a secured claim if that claim is secured *only* by a security interest in real property that is debtor's principal residence. Therefore, where a claim is secured by an interest in something in addition to debtor's principal residence, the anti-modification clause of § 1322(b)(2) does not apply. The Court does not perceive ambiguity in the language of this statute. It is narrowly drafted, and, as

other courts have noted, Congress intended to extend anti-modification protection only to lenders whose only collateral is the traditional home mortgage.[2]

The 2000 van is clearly listed as collateral in most of the documentary evidence presented. It is listed on the Promissory Note dated 02/27/2008, just eight months after the first promissory note, with the stated purpose for the note being "refinance" and the amount borrowed increased from $50,850.00 to $65,189.72. This is the Note that was attached to Bank's Proof of Claim. First Bank also argues that the 2000 van was scrapped and of no value, so it should not be considered other property securing the loan. The Johnsons' schedules reflect that the van was sold or disposed of with approval of First Bank sometime pre-petition. However, in its Proof of Claim, First Bank listed its claim as secured by the van as of the petition date. It provided no evidence to the Court that it had formally released its lien on the van. Instead, it continued to claim that it held a security interest in the van as evidenced by the exhibits attached to its Proof of Claim. First Bank's Deferral/Extension Agreements entered in 2012 and 2013 continued to list the 2000 van as collateral.

Whether a court should consider what collateral secured the note by focusing on the loan documents at the time of the loan or what collateral existed at the petition date is another issue on which courts disagree.[3] However, whether this Court focuses on the date of the loan documents

---

[2] *See In re Larios*, 259 B.R. 675, 678-79 (Bankr. N.D. Ill. 2001); *In re Loper*, 222 B.R. 431 (D. Vt. 1998).

[3] *See* Keith M. Lunden & William H. Brown, *Chapter 13 Bankruptcy, 4th Ed.* §121.2, at ¶1, Rev. Apr. 22, 2011, www.ch13online.com (cases updated Jan. 1, 2015): "The courts do not agree on the rules for determining whether the protection from modification in § 1322(b)(2) is available when the extent of the collateral or the debtor's use of the collateral changes between the time of the loan and the Chapter 13 petition. Three issues are presented: (1) as of what time is the extent or use of collateral determined for purposes of the protection from modification in § 1322(b)(2); (2) what facts determine the outcome—is the actual use at the magic time controlling, or should the court consider collateral that no longer exists or use that is permitted or contemplated; and (3) who has the burden of proof? These questions have fractured the reported decisions."

or the petition date, it is clear that First Bank considered the note secured by both the real estate, the mobile home and the van. Thus, its claim was not secured *only by* a security interest in real property that is the debtor's principal residence. Although other courts may choose to rely on numerous factors to decide whether §1322(b)(2)'s protection should apply, this Court chooses to focus on the loan documents themselves. This approach provides certainty to parties at the time they contract for a real estate mortgage and avoids parties being able to manipulate the application of §1322(b)(2)'s protections in the event of bankruptcy.

The Court also notes that in addition to the specific collateral listed as the real estate in Lone Grove, and the 2000 Dodge Van, the 2008 Promissory Note includes language claiming other collateral, including "all money, deposits and other property owned by any debtor and in Lender's possession or control . . . :"[4] The Promissory Note also includes a right to setoff any indebtedness against deposits. No evidence was presented regarding additional notes or depository accounts the Johnsons may have had with First Bank. Their Schedule B lists a checking account with "1st Bank & Trust" with a negative balance. However, it would seem that the intent of these clauses in the Promissory Note is to add security.[5] Here, First Bank desired additional collateral to secure the

---

[4] Depository accounts are named as additional collateral in the promissory notes in the paragraph entitled "COLLATERAL" and in the Security Agreement in paragraph II "Description of Collateral." These clauses also appear to cross-collateralize the notes with any other agreement entered between the Johnsons and First Bank.

[5] *See Jackson v. U.S. Bank, N.A.* (*In re Jackson*), 2013 WL 6408039 (Bankr. N.D. Ill. Nov. 20, 2013)(Mortgage that included security interest in debtor's depository accounts with lender was not protected from modification by § 1322(b)(2).).

loan. Its choice removes it from §1322(b)(2)'s protection, even though the only collateral that may be available to satisfy its claim at the petition date was the Johnsons' principal residence.[6]

### III. Conclusion.

IT IS THEREFORE ORDERED THAT Debtors' Motion to Set Value of Secured Claim (Docket Entry 10) is **granted in part.** The Court finds that the value of First Bank & Trust Co.'s secured claim regarding Debtors Russell and Brandi Johnsons' homestead with 1974 mobile home is $ 40,000 and the 2000 Dodge Van is $ 0.

###

---

[6] *See In re Picht*, 2009 WL 1766820 (Bankr. D. Kan. 2009) (rev'd on other grounds, 428.B.R. 885 (B.A.P. 10th. 2010) ("The determinative factor is the language granting the security interests in the underlying loan documents, regardless whether additional collateral in fact exists. If the loan documents provide for security in addition to the debtor's principal residence, then the creditor is not entitled to the benefits of §1322(b)(2)." (*citations omitted)*)).